Opinion delivered December 23, 1899.

1. CONTINUANCE—COUNTER AFFIDAVITS.—The statement of facts which are expected to be proved by an absent witness cannot be contradicted by counter affidavits or other testimony, for the purpose of defeating a motion for continuance; but testimony may be heard for the purpose of showing a want of diligence in procuring the testimony of an absent witness, or a want of good faith in making the application for a continuance, or an improbability that the proposed testimony can be obtained. (Page 292.)

2. SAME—GOOD FAITH OF APPLICATION.—When a continuance is asked by the defendant in a criminal case upon the ground that defendant has been informed by one H. that an absent witness, S., if present, would testify to certain facts, it is competent for the state to prove by H. that he had never given such information, for the purpose of determining whether the application was made in good faith or not. (Page 293.)

3. SAME—PROBABILITY OF OBTAINING ABSENT WITNESS.—It is not an abuse of discretion to refuse to continue a cause for the absence of a witness where there appears no reasonable hope of finding him. (Page 293.)

Appeal from Pulaski Circuit court, First Division.

ROBT. J. LEA, Judge.

*Wm. J. Duval,* for appellant.

The court should have either granted a continuance or permitted the affidavit as to what would be the testimony of the absent witness to be read, as evidence, to the jury. 50 Ark. 108.

*Jeff Davis, Attorney General,* and *Chas. Jacobson,* for appellee.

The court properly exercised its discretion in overruling the motion for continuance.

BATTLE, J. The defendant, M. B. Lane, was indicted by a grand jury of the Pulaski circuit court for murder in the first degree, committed by killing Letha Lane on the 25th day of November, 1898, by shooting her with a gun. The indict-

ment was filed in court on the 7th day of January, 1899. On the 14th of March following, the cause was continued on motion of the defendant, and was set for trial on the 29th of May, 1899. On the day set he filed another motion and an affidavit for continuance, based upon the absence of one Florence Simons. The motion, which was sworn to, alleged that the defendant could not safely go to trial, on account of the absence of a witness whose name is Florence Simons; that he had used due diligence to obtain the evidence of the witness by having subpœnas for him issued and placed in the hands of the sheriff; "that said witness has not been served, as sheriff was unable to find him; that the evidence of said witness is material to the defense of this case, and that said witness is not absent by the consent, connivance or procurement of the defendant; that said witness, if present, as defendant believes, will swear to the statements and facts as herein set up, and that defendant believes said statements and facts to be true; * * * * that he cannot prove these facts by any other witness; that he believes, if the continuance is granted, that this evidence can be procured;" that "Florence Simons would swear, if present, that he was a railroad man, and was an extra man on the road at the time of the homicide; on the morning of November 25, 1898 (the time of the killing), he was standing in front of deceased's restaurant, and saw the defendant go in the front door with a gun, and immediately afterwards saw Virgil Wright go running in the side door; and saw the two men scuffling for the possession of a gun, and during the scuffle heard the gun discharged, and immediately thereafter discharged the second time." Immediately after the motion for continuance the following statement is set out in the bill of exceptions in this case: "The defendant, through his attorney, J. B. McLaughlin, alleged as one ground for continuance the absence of one witness, named Florence Simons. It was claimed that said witness was not in the state of Arkansas; that due diligence had been made to find him. When last heard of, he was in Louisville, Kentucky, and interrogatories had been sent to said city for him to answer. At the time set for taking them he could not be found. If he [was] present, it was alleged he

would swear: [Here follows a statement of what he would swear, which is the same as that contained in the motion].

"Counsel for defendant stated to the court that he had never seen or spoken to said witness, Florence Simons, but derived his information from one W. T. Harper, who resides in Argenta. Whereupon said Harper was subpœnaed, sworn and testified as follows: 'I know one Florence Simons. I saw him on November 25th, the day Mrs. Lane was killed. Simons said he expected to hear of some trouble from Lane, as he had seen him the night before go into the restaurant, where the killing occurred, with a shotgun in his hands. Simons did not see the killing. Mr. McLaughlin is mistaken when he says I told him Simons saw the difficulty. Simons told me he saw Lane the night before the killing, but not on the morning it happened. He did not tell me he saw Virgil Wright, or any one else, go in the restaurant with the gun." Counsel for the defendant was unable to make any showing to the court as to the probability of ever finding said witness.

"The state introduced the testimony of the night foreman in charge of all extra men and also the day foreman, both of whom testified they knew the men who worked under them, and that they had charge of the extra men on the day and night of November 25, 1898, and that no man by [the] name of Florence Simons worked for them. They never knew or heard of such a man. He may have worked under a different name.

"Said testimony was taken on the hearing of the motion for continuance. The court, having heard all the testimony, overruled the motion for continuance."

The defendant insists that the court had no right to hear evidence controverting the truth of his motion. The contention is partly correct. The statement of facts which are expected to be proved by an absent witness cannot be contradicted by testimony or counter-affidavits for the purpose of defeating a continuance; for the statute which regulates the postponement of trials in criminal prosecutions, so far as it is applicable, provides that no continuance shall be granted in civil cases on account of an absent witness, if the adverse party will admit that the absent witness, if

present, would testify to the statement contained in the application for a continuance,—thereby prohibiting the defeat of the application, so far as it relates to the testimony of the absent witness, by counter-affidavits, or in any other manner, except by admitting that the witness, if present, would testify as the appellant believes he will. But, as to facts showing diligence and the like, the case is wholly different, and the same reasons do not apply. Counter-affidavits or other competent' evidence may be admitted and heard for the purpose of showing the want of diligence in procuring the testimony of an absent witness, or the want of good faith in making the application for a continuance, or the improbability that the proposed testimony can be obtained. *State* v. *Rainsbarger*, 74 Iowa, 196; *State* v. *Bailey*, 94 Mo. 311; *Cushenberry* v. *McMurray*, 27 Kas. 328; *Lascelles* v. *State*, 90 Ga. 375; *State* v. *Bevel* (Iowa) 56 N. W. Rep. 546; Anonymous, 3 Day, 308; *McGee* v. *State*, 31 Texas Crim. Rep. 71.

Continuances in criminal as well as in civil cases are, as a general rule, within the sound discretion of the trial court; and a refusal to grant a continuance in a criminal case is never a ground for a new trial unless it is made to appear that such discretion has been abused to the prejudice of the defendant.

The defendant in this case, through his counsel, endeavored to show his good faith in asking for a continuance by saying that he had been informed by one Harper that Simons would testify what he expected to prove by him. Harper thereupon testified that he had not given the information. The presumption is that the defendant made the best showing within his power. He was not required to show the source of his information, but, having done, so, it was competent to ascertain whether he had been informed as he alleged, for the purpose of determining whether the application was made in good faith. The result of the investigation made in this case was sufficient to induce the court to believe that it was not.

More than four months had elapsed after the indictment was filed in court before the trial in this case. The defendant admitted, when his application was before the court, that Simons, the absent witness, was not within the state, yet he

states in his application that the diligence used to procure his testimony was the issuing of a subpœna for him and the placing of the same in the hands of the sheriff. He, however, stated to the court that he had used due diligence to find him, but without success; that when last heard from he was in Louisville, Kentucky; and that he had sent interrogatories to that city for him to answer, but at the time set to examine him he could not be found. It is further stated in the bill of exceptions, in this connection, that the "counsel for defendant was unable to make any showing to the court as to the probability of ever finding said witness." Surely it is not the duty of the court to continue a case on account of an absent witness when there is no reasonable hope of finding him. This cause had been continued, on the defendant's application, for more than two months; and in that time, it seems, he had been unable to discover anything to show even a probability of the discovery of the place of his abode. It does not, therefore, appear to us that the trial court abused its discretion in refusing the continuance, to the prejudice of the defendant.

The defendant was arraigned and pleaded not guilty to the indictment. He was tried and convicted of murder in the first degree. The trial court refused to grant him a new trial, but rendered judgment against him according to the verdict. He insists that the court erred in doing so, because the evidence was not sufficient to sustain the verdict. But, after a careful reading and consideration of all the evidence as it appears in the transcript before us, we find that it is sufficient to sustain it in this court.

The judgment of the circuit court is, therefore, affirmed.