William Orman v. O. E. Bishop, superintendent,
ARKANSAS STATE PENITENTIARY

5369                                    435 S.W. 2d 440

Opinion Delivered December 23, 1968

*Terral, Rawlings, Matthews & Purtle* for appellant.

*Joe Purcell*, Atty. Gen.; *Don Langston*, Asst. Atty.
Gen. for appellee.

JOHN A. FOGLEMAN, Justice.   This is a sequel to *Orman* v. *Bishop,* 243 Ark. 609, 420 S.W. 2d 908. There we remanded appellant's petition for post-conviction relief.   We found that there was a question of fact as to whether appellant voluntarily changed his pleas from not guilty to guilty on five counts of robbery.   Since the trial judge had not made specific findings on this point, as required by Criminal Procedure Rule I, and his testimony on this critical point was important, we directed a hearing by another judge on remand.   After a hearing by a circuit judge assigned to the Pulaski Circuit Court for this purpose, appellant was again denied relief.   He brings this appeal, relying upon the following points:

> "I.   That petitioner's constitutional rights were violated by prolonged detention before being charged.
>
> II.   Petitioner's constitutional rights were violated by the hearing on his plea without the presence of his attorney.
>
> III. Petitioner's plea of guilty was entered as a result of duress and at a time when he did not fully understand the results of the plea."

At the second hearing the matter was submitted to the judge on assignment upon the record made in the previous hearing, together with the testimony of the petitioner and five other witnesses, some of whom also testified at the previous hearing.   One of the witnesses was Judge William Kirby, the judge presiding when appellant's pleas of guilty were accepted.   The testimony taken at the second hearing is substantially the same as that given at the first hearing.   The testimony of the trial judge is virtually identical with the statement he made at the first hearing.   Consequently, we will not set out the testimony at length, but will only refer to such of it as may be necessary in considering the points urged by appellant.

POINT I

This point has not been raised at any stage of the proceeding prior to the filing of appellant's brief on appeal. Even though it involves an assertion that constitutional rights of an appellant were violated, it cannot be raised for the first time on appeal. *Silas* v. *State,* 232 Ark. 248, 337 S.W. 2d 644, cert. denied 365 U.S. 821, 81 S. Ct. 705, 5 L. Ed. 2d 698; *Clayton* v. *State,* 191 Ark. 1070, 89 S.W. 2d 732. Even if the question had been properly raised, we find no merit in the argument. It is based upon the fact that appellant was subjected to in-custody interrogation while held in the North Little Rock jail from 8 p.m. on Tuesday until 9 p.m. on Saturday without being charged. This was in November and December of 1963, so the *Escobedo*[1] and *Miranda*[2] decisions have no bearing in this case. *Swagger* v. *State,* 227 Ark. 45, 296 S.W. 2d 204, cited by appellant, has no proper application to the facts here. That case involved an indigent, illiterate minor whose conviction on a plea of guilty was set aside because he was deprived of due process because of the failure of the court to appoint counsel before the plea was accepted. The few days of detention of Swagger was only a minor incidental fact considered by the court in arriving at its holding. The trial judge made specific findings here that petitioner was not denied the right to remain silent and was advised of the probability that anything he might say would be used against him. He made the further finding that appellant voluntarily, expressly, knowingly and understandingly waived the right to counsel and gave a voluntary statement that was not used against him. There is substantial evidence to support these findings. We have previously found that the evidence preponderates against appellant as to mistreatment by officers while in the North Little Rock jail. *Orman* v. *Bishop,* 243 Ark. 609, 420 S.W. 2d 908. We find no reversible error on this point.

[1] 378 U.S. 478, 84 S. Ct. 1758, 12 L. Ed. 2d 977.
[2] 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694.

## POINT II

Orman was brought before the court as the result of a message from him to the judge indicating that he wanted to change his pleas.

On this point, Judge Kirby testified, in substance: After being advised of Orman's desire, the judge interrogated him about the identity of an assailant. This questioning was provoked by appellant's appearance which obviously indicated that he had been beaten. Orman refused to disclose this information, in spite of the judge's promise that the person named would be charged with assault with intent to kill. Orman wanted to enter pleas of guilty, go to the penitentiary and get it over with. The judge was reasonably certain that he asked Orman where his lawyer was.

In spite of the fact that Orman had advised the judge that Charles Scales was his lawyer and Scales had consulted with Orman several times, there is no indication that Orman ever asked for, or had, any consultation with Scales about the change of his plea at any time. Although Scales denied that he ever advised Orman to plead guilty, on the first hearing Orman testified to the contrary. On the second hearing, Orman stated only that he does not remember telling Judge Kirby that he wanted a lawyer when brought before the judge for this purpose. The trial court found that appellant's appearance before the court when his pleas were changed did not violate his Fifth Amendment right to counsel, having been brought before the court at his own request. The court also found that he had voluntarily, knowingly and understandingly decided to change his pleas, and waived his right to counsel. We find substantial evidence to support the findings of the trial judge. Orman was not uninitiated in criminal procedures. He admits previous convictions in four felony cases, each after trial in a different jurisdiction.

We are unable to say that the findings of the trial judge, who saw and heard the witnesses, are not fairly supported by the evidence.

### POINT III

The trial judge found: That appellant was not harassed or mistreated by any law enforcement officer while in the Pulaski County jail, and that his beating by a fellow inmate was not directed, procured or suffered to happen by any law enforcement officer; that appellant did not receive a threatening note as testified by him; that he was not denied the right to contact anyone; that the beating of appellant, alone or in conjunction with the alleged note, did not render the decision to plead guilty involuntary, although it may have accentuated the timing of the decision; that Judge Kirby advised appellant not to plead guilty if he was not guilty, that he thought Orman was a "21-year man" and that if a jury trial on each charge was requested, the sentences would be "stacked" (*i.e.*, the judge would make the sentences run consecutively).

There were also findings that the judge's statements did not coerce or induce the change of pleas. These findings were based, in part, on testimony tending to show that: The statements of the judge about his practice in making sentences imposed by juries run consecutively was made after Orman had clearly indicated his desire to change his pleas and had inquired about what the judge had in mind for his sentence. When the judge indicated that he thought a 21-year sentence appropriate, Orman expressed the thought that the sentence was too heavy. The judge advised him of his practice in case of multiple convictions after advising him that he had a perfect right to reconsider, change his plea to not guilty and stand trial on the five counts with which he was charged. After this explanation, Orman decided to stand on his pleas of guilty.

If Orman feared a 105-year sentence, his fear was induced by his own knowledge of the hazards involved and not by any coercion by the trial judge. A failure of the judge to advise a defendant of such a practice under the circumstances as they arose might have been the basis of appropriate criticism. His advice here is not.

There is no evidence showing that any officer had any connection with the beating administered to Orman by Scrappy Moore. The only evidence remotely suggesting the connection of any officer is the testimony of appellant that his beating followed closely upon a suggestion by Lt. Munn that he had better plead guilty if he wanted to do well. Moore was immediately removed from the cell or "bull pen" and Orman given hospital treatment. When he was returned to the jail, he was placed in a cell in another section of the jail with another prisoner.

There are discrepancies in the testimony of Orman at the two different hearings. For example, at the first hearing he told of a note received by him after the beating telling him he had better plead guilty if he wanted to get out of the jail alive. He said that the note was signed by an inmate named Bill and gave other identifying information about him. At the second hearing, Orman stated that he didn't know who wrote the note. Orman's admission of four felony convictions also bears materially on his credibility. Under the circumstances, he could not have been entirely ignorant about the effect of a plea of guilty.

The judgment is affirmed.